**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| LAUNDRY, DISTRIBUTION AND FOOD SERVICE JOINT BOARD, WORKERS UNITED,<br><br>              Petitioner,<br><br>    v.<br><br>WACOAL AMERICA, INC.,<br><br>              Respondent. | Civil Action No. 25-11806 (JXN) (SDA)<br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is Petitioner Laundry, Distribution and Food Service Joint Board, Workers United's ("Union") petition (ECF No. 1) and motion (ECF No. 2) to confirm a May 22, 2025 arbitration award ("Award"), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Respondent Wacoal America, Inc. ("Wacoal") opposed (ECF No. 8), and filed a cross-motion to vacate the Award (ECF No. 9). The Union opposed Wacoal's cross-motion. (ECF No. 12.) Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185. Venue is proper pursuant to 9 U.S.C. § 9, 28 U.S.C. § 1391, and 29 U.S.C. § 185. The Court has carefully reviewed the motions and the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Union's motion to confirm the Award is **GRANTED** and Wacoal's motion to vacate is **DENIED**.

I.      **BACKGROUND**

A.      **The CBA**

The Union and Wacoal were parties to a collective bargaining agreement ("CBA"). (*See* Union Pet. Ex. A ("CBA"), ECF No. 1-3.) The CBA covered:

> All workers employed by [Wacoal] in connection with any and all operations in the special handling, picking, warehousing and shipping of garments to or from the warehouse covered by this Agreement, by or for [Wacoal], including, hi low operators, shipping clerks, pickers, packers, receivers, warehouse associates and all other workers, excluding forepersons and assistant forepersons, shall be covered by this Agreement.

(*Id.* § 2(b).) The CBA prohibited Wacoal from discharging workers "without good and sufficient cause." (*Id.* § 16.) The CBA established a grievance procedure for the Union to contest whether Wacoal fired a worker without good cause. (*Id.*) If the grievance procedure failed, the CBA required the parties to submit the matter to arbitration. (*Id.*) The CBA also set forth arbitration procedures. (*Id.* § 31.)

B.      **Collada's Conduct**

Before the CBA was set to expire on December 31, 2024, the parties tried to negotiate a new agreement. (Union Pet. Ex. C ("Arb. Op.") at 5, ECF No. 1-3.) The final (and ultimately unsuccessful) negotiation session took place on December 10, 2024. (*Id.*) Following the meeting, Yadhira Alvarez ("Alvarez"), a Union representative, sought and obtained permission from Wacoal to meet with Union members in Wacoal's cafeteria, ostensibly to update them about the status of negotiations. (*Id.*) Alvarez and another Union representative went to the cafeteria and told Union members about the stalled negotiations. (*Id.*) Shortly thereafter, a crowd of Union members walked towards a Wacoal executive's office on the Distribution Center floor, chanting "we want a contract now." (*Id.*)

2

Wacoal's Chief Financial Officer, LaRome Talley ("Talley") went to the Distribution Center floor to answer questions directly. (*Id.* at 6.) Supervisor Leo Nunez ("Nunez") interpreted the questions in Spanish. (*Id.*) After Talley answered a question about temporary workers, Juan Collada ("Collada") confronted Nunez and shouted "You lie" two or three times. (*Id.*) That evening, Wacoal fired Collada "due to his aggressive and unprofessional behavior in the Distribution Center." (*Id.*) The Union filed a grievance and the matter went to arbitration. (*Id.*)

C.      **Arbitration**

The matter was assigned to Robert T. Simmelkjaer ("Arbitrator"), and the arbitration hearing took place on April 1, 2025. (*See generally id.*) Wacoal maintained they had good cause to fire Collada for "violating the Company's 'policy prohibiting intimidation, threats of violence, and violent and near-violent behavior in the workplace which is contained in Wacoal's Employee Handbook and General Security Rules and Regulations.'" (*Id.* at 6–7.) According to Wacoal, Collada "aggressively pointed in [Nunez's] face and yelled, 'you lie!' at least two or three times," and "'behaved in an angry, near-violent, intimidating manner' which 'crossed the line' from proper workplace conduct and warranted his termination." (*Id.* at 7.) Talley and several other managers testified for Wacoal. (*Id.* at 8–11.) The Arbitrator also reviewed video footage of the incident. (*Id.* at 9.)

The Union, meanwhile, argued that (1) Collada did not have adequate notice of the workplace violence policy; (2) the workplace violence policy was not equally applied, as Nunez behaved more aggressively than Collada, but was not disciplined; (3) Wacoal failed to satisfy the criteria for just cause termination; and (4) Collada was engaged in "protected concerted activity" under the National Labor Relations Act. (*Id.* at 12–13.) Alvarez, Collada, and another Union employee testified for the Union. (*Id.* at 14–18.)

3

On May 22, 2025, the Arbitrator issued an Opinion concluding that Wacoal lacked good cause to fire Collada. (*See generally id.*) The Arbitrator stated:

> Considering the evidence in its entirety, the Arbitrator is not persuaded that the Employer had good and sufficient cause to terminate the employment of Juan Collada for his conduct on December 10, 2024. Not only did the Employer fail to adduce preponderant evidence that Collada's conduct on December 10, 2024 violated its policy prohibiting violence in the workplace, it also failed to negate the Union's claim that Collada's assertive behavior toward a supervisor during a collective activity was protected under Section 7 of the NLRA.

(*Id.* at 18.) After reviewing the record, the Arbitrator explained:

> [T]here is no evidence that Collada engaged in conduct that can be described as violent or near-violent. The fact that Collada aggressively pointed his finger at Nunez and loudly stated "You lie!" three times is not tantamount to a violent act.
>
> Although Nunez obviously took offense at Collada's aggressive finger pointing and accusatory comment, the reactions of the Employer's participants and the Union leaders negates this interpretation. Whereas the Workplace Violence Policy provides, "If you encounter an individual who is threatening immediate harm to an employee or visitor to our premises, contact an emergency agency (such as 911) immediately." Company management acknowledges that, despite its claim that Collada "was behaving in such an angry, near-violent, intimidating manner" that "Talley and Alvarez got between Collada and Nunez to ensure that Collada's behavior did not become physically violent," the Company neither called 911 nor its security personnel.
>
> Clearly, Talley, who stands at least six feet, was not intimidated by Collada, who testified that he is 5 feet, 3 inches. Talley was more concerned with Nunez's potential physical retaliation against Collada. Alvarez testified that Collada in his remarks and conduct was "calm but firm."

(*Id.* at 20–21.) The Arbitrator also found "evidence of disparate treatment in that Nunez, a supervisor, faced no discipline as the result of his aggressive finger pointing behavior toward [Collada], which prompted Talley to intervene in order to avoid retaliation, vis-à-vis the

4

Employer's decision to terminate Collada for similar but ostensibly less aggressive conduct." (*Id.* at 22.)

The Arbitrator then concluded Wacoal failed to satisfy the "well-established criteria for a just cause termination." (*Id.* at 22.) The Arbitrator stated:

> First, it is doubtful that Collada, a Spanish speaking employee, was given notice of the workplace violence policy. The Employee Handbook is written in English and, although Wacoal's General Security Rules and Regulations state that a Spanish version is available, and [a human resources manager] testified that [Wacoal] managers orally discuss the rules during onboarding, Collada testified credibly that he did not receive this instruction.
>
> Second, [Wacoal] acknowledged that it conducted no investigation of the incident because the presence of its managers during the incident was sufficient, obviating an interview of [Collada] for his side of the story. It is noteworthy that Nunez emailed his version of the events to Wacoal Management on December 11, 2024, one day after it decided to terminate Collada.
>
> Third, as noted above, there is no evidence that Collada violated the Employer's policy on workplace violence. The video evidence, witness testimony, and Collada's admission establish that he pointed his finger, yelled "You lie!" three times at Nunez, and desisted from any physical contact or threatening gestures.
>
> Moreover, the Arbitrator finds, in terms of just cause, no basis for disciplining [Collada]. [Wacoal's] decision to terminate his employment was clearly disproportionate to his alleged offense. Having performed his duties satisfactorily for seven years, without any disciplinary record, the decision to terminate Collada was excessive. But for [Wacoal's] decision not to impose any discipline on Nunez for conduct that was at least similar, but probably more aggressive, a Verbal Warning would have sufficed as a first step in the Employer's progressive discipline procedure.

(*Id.* at 22–23.) The Arbitrator then addressed whether Collada's conduct was protected concerted activity, remarking:

5

Finally, in the Arbitrator's opinion, Wacoal did not have just cause to terminate Collada because his activities on December 10, 2024 were protected concerted activity under the NLRA Section 7 of the NLRA gives private-sector employees the right to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157.

The videotape of the December 10, 2024 incident clearly shows Wacoal's Union members engaged in a demonstration characterized as a "march-on-the-boss" to protest what they considered to be an unsatisfactory wage offer. The employees wore T-shirts with the logo "We rise" and chanted, "We want a contract now" pursuant to the collective action. Alvarez, the Union's Chief of Staff, is seen leading the workers from the cafeteria to the Distribution Center where Senior Vice President Talley had agreed to answer their questions.

It was in the context of the Union's concerted activity and protest over what it deemed to be an inadequate wage offer that Collada "expressed himself." The NLRB case law supports a finding that Collada's finger pointing and yelling, "You lie!" about Wacoal's use of temporary workers is protected activity so long as the protest is peaceful, does not interfere with the Employer's production, and is not threatening or intimidating. Inasmuch as employee protected activity has been found when employee(s) conduct has entailed "brandish[ing] his finger at management" (See, Wismettac Asian Foods, 371 NLRB No. 9 (2021), "using multiple curse words, shouting at a fellow employee and throwing his safety glasses on the ground" (See, Weber Aircraft, Inc.), supra and "moving close to a supervisor, pointing a finger at her and refusing to go back to work after she threatened to call the police" (See, U.S. Postal Service, 360 NLRB 677), (2010), the conduct of Collada falls short of these examples.

Given the fact that Collada's actions were protected under Section 7 of the NLRA, his discipline was not for just cause.

(*Id.* at 23–24.) Accordingly, the Arbitrator found Wacoal lacked good cause to fire Collada and ordered Collada "reinstated to his position as an activator, effective immediately, with full back pay and commensurate benefits." (*Id*. at 25.)

Wacoal, however, refused to return Collada to work the next day. (Union Pet. Ex. F, ECF No. 1-3 at *84.) Instead, on May 29, 2025, Wacoal moved for reconsideration before the

6

Arbitrator, which the Arbitrator denied on June 13, 2025. (*See* Union Pet. Ex. D ("Arb. Recons. Op."), ECF No. 1-3.)

Later that day, the Union demanded that Wacoal immediately comply with the Award and return Collada to work. (Union Pet. Ex. E, ECF No. 1-3 at *81.) Wacoal refused. (*Id*. at ¶ 22.)

### D.    The Instant Motions

On June 16, 2025, the Union moved to confirm the Award and requested: (i) Collada's immediate reinstatement to his previous position, with "full back pay and benefits from the date of his termination to the date of [Wacoal's] compliance with such order"; (ii) pre- and post-judgment interest; and (iii) attorneys' fees and costs incurred in litigating this motion and in opposing the Motion for Reconsideration, including the fees of the Arbitrator. (Union Pet. at 6.) Wacoal opposed the motion (Wacoal Opp'n, ECF No. 8), and moved to vacate the Award (Wacoal Mot., ECF No. 9). The Union replied. (Union Reply, ECF No. 12.) This motion is now fully briefed and ripe for the Court to decide.

## II.    LEGAL STANDARD

The Court resolves a motion to confirm or vacate an arbitration award under the FAA through summary proceedings. *See Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 253–54 (3d Cir. 2020) (confirming an award); *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 313 (3d Cir. 2021) (vacating an award). A summary proceeding is "not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *PG Publ'g, Inc.*, 19 F.4th at 314 (quoting *Teamsters*, 966 F.3d at 252).

There is a strong presumption "in favor of enforcing arbitration awards" under the FAA. *France v. Bernstein*, 43 F.4th 367, 377 (3d Cir. 2022) (quoting *Hamilton Park Health Care Ctr.*

*Ltd. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 861 (3d Cir. 2016)). The standard

of review of an arbitrator's decision "is extremely deferential." *Indep. Lab. Emps.' Union, Inc. v.*

*ExxonMobil Rsch. & Eng'g Co.*, 11 F.4th 210, 215 (3d Cir. 2021). Courts "do not entertain claims

that an arbitrator has made factual or legal errors." *Sutter v. Oxford Health Plans LLC*, 675 F.3d

215, 219 (3d Cir. 2012). When an arbitrator makes a "good faith attempt" to interpret and enforce

a contract, "even serious errors of law or fact will not subject his award to vacatur." *Id.* at 220.

Instead, the Court may only vacate an arbitration award on four narrow grounds:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The party moving to vacate an arbitration award "immediately bears the burden

of proof." *PG Publ'g*, 19 F.4th at 314.

## III.   <u>ANALYSIS</u>

### A.   <u>Vacatur is Unwarranted</u>

Wacoal argues that the Award should be set aside because the Arbitrator (i) "refused to

hear evidence pertinent and material to the controversy," (ii) "manifestly disregarded the

applicable law," and (iii) "showed evident bias, thereby depriving Wacoal of a fair hearing."

(Wacoal Br. at 5, ECF No. 9-1.) The Court addresses each argument in turn.

### i.      Refusal to Consider Material Evidence (9 U.S.C. § 10(a)(3))

Under § 10(a)(3) of the FAA, the Court may vacate an arbitration award where the arbitrator engaged in "misconduct . . . in refusing to hear evidence pertinent and material to the controversy." *Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 119 (3d Cir. 2016) (quoting U.S.C. § 10(a)(3)). Misconduct is conduct that "so affects the rights of a party that it may be said that [they were] deprived of a fair hearing." *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 245 (3d Cir. 2021) (alteration in original) (quoting *Newark Stereotypers' Union v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968)); *see also Nemo Digit. Holdings Corp. v. XYZ Fin. Mkts. LLC*, No. 24-737, 2025 WL 3754161, at *3 (D.N.J. Dec. 26, 2025). A "fair hearing" is "one where the parties have notice and an opportunity to present evidence and arguments before an impartial arbitrator." *CPR Mgmt.*, 19 F.4th at 245 (quoting *Newark Stereotypers' Union*, 397 F.2d at 600). Accordingly, the party seeking vacatur "must show more than arbitrator error in interpreting or applying the governing law." *Facta Health Inc. v. Pharmadent LLC*, No. 23-2224, 2024 WL 4345299, at *6 n.5 (3d Cir. Sep. 30, 2024) (quoting *Whitehead*, 811 F.3d at 121). If "no dishonesty is alleged, the arbitrator's improvident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (citation and internal quotation marks omitted).

Wacoal argues that the Award should be overturned because the Arbitrator failed to consider evidence demonstrating that Collada's "aggressive and intimidating actions" exceeded the bounds of "protected activity" and conflicted with Wacoal's right to "control disruptive conduct in the workplace." (Wacoal Br. at 10-11.) Wacoal claims the Award included no discussion of the fact that Collada's actions occurred "(i) during a workday, (ii) on the shop floor, [and] (iii) disrupt[ed] the work at Wacoal," and the Arbitrator ignored "video evidence and the

9

consistent, undisputed testimony of Wacoal's management" showing Collada's conduct "disrupted the workplace and posed a potential threat to safety." (*Id.*)

This argument, however, fails to appreciate that vacatur under § 10(a)(3) is warranted only where the challenging party had *no* real opportunity to present material evidence, and as a result was denied a fair hearing. *See Jersey Shore Univ. Med. Ctr. v. Loc. 5058, Health Pros. & Allied Emps.*, No. 16-4840, 2017 WL 1025180, at *3 (D.N.J. Mar. 16, 2017) (citation omitted) ("[F]or a district court to vacate an award due to prejudice, a party to an arbitration proceeding must not have been given any notice or opportunity to present arguments and evidence on the merits of the dispute."); *see also ICAP Corps., LLC v. Drennan*, No. 14-5451, 2015 WL 10319308, at *5 (D.N.J. Nov. 18, 2015). Here, Wacoal admits it was allowed to present witness testimony and to introduce documentary, videographic, and written evidence, including the evidence that Wacoal claims should have led the Arbitrator to a different conclusion. (*See generally* Wacoal Br.) While Wacoal disagrees with the Arbitrator's analysis of the evidence, the Court "may not vacate an arbitration award merely because of different views on the claim's merits, nor because the Court feels that the arbitrator made a factual or legal error." *Jersey Shore Univ.*, 2017 WL 1025180, at *3 (citing *Major League Umpires Ass'n v. Am. League of Pro. Baseball Clubs*, 357 F.3d 272, 279 (2004)); *Edward Mellon Tr. v. UBS Painewebber*, 2006 WL 3227826, at *6 (W.D. Pa. Nov. 6, 2006) ("[A] court may not reweigh the evidence under the guise of determining whether the [arbitrator's] decision was irrational . . . . [n]or does a review for 'irrationality' permit an inquiry into the sufficiency of the evidence supporting a decision.") (citations omitted); *Dailey v. Legg Mason Wood Walker, Inc.*, No. 08-1577, 2006 WL 3227826, at *4 n.5 (W.D. Pa. Dec. 8, 2009) (refusing to vacate an award under § 10(a)(3) where the plaintiff had "neither alleged, nor shown, that the arbitrators refused to hear his evidence.")

10

Wacoal additionally supplies a litany of supposed factual and legal errors that the Arbitrator allegedly made in reaching his decision, including: (1) mischaracterizing Collada's position at Wacoal (which allegedly demonstrated that the Arbitrator "was not fully engaged with all the evidence"); (2) underestimating video evidence showing "Collada's conduct was aggressive and intimidating"; (3) accepting several speculative arguments that, Wacoal alleges, were belied by the evidence; (4) concluding that Wacoal inconsistently applied its workplace violence policy in spite of "consistent, undisputed testimony" to the contrary; (5) concluding that Collada's behavior did not warrant immediate termination; and (6) failing to "make any specific credibility determinations." (*See* Wacoal Br. at 7–16.) Again, however, Wacoal does not allege that the Arbitrator refused to hear any piece of evidence that Wacoal attempted to present, let alone that such refusal deprived Wacoal of a fair hearing. To the contrary, Wacoal takes issue with the fact that the Arbitrator *heard* all the evidence and simply did not attribute the significance to such evidence that Wacoal would like. The Court may not overturn an Award for this type of factual error. *See News Am. Publ'n, Inc. Daily Racing Form Div. v. Newark Typographical Union*, *Loc. 103*, 918 F.2d 21, 24 (3d Cir. 1990) ("An arbitral award may not be overturned for factual error . . . or because the court disagrees with the arbitrator's assessment of the credibility of witnesses, or the weight the arbitrator has given to testimony.") (citations omitted); *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 295 (3d Cir. 2010) (stating that a court "may not overrule an arbitrator simply because [it] disagree[s]." (quoting *United Transp. Union Loc. 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995)).

### ii.    *Manifest Disregard of Law*

The Circuits are split on whether an arbitrator's "manifest disregard of law" is still a valid basis to vacate an arbitration award, *Whitehead*, 811 F.3d at 121, and the Third Circuit has not yet

11

weighed in, *Facta Health*, 2024 WL 4345299, at *6 n.5. To the extent that manifest disregard of the law remains a viable basis for vacatur, the party seeking vacatur must demonstrate that the arbitrator: "(1) knew of the relevant legal principle, (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it." *Paul Green Sch. of Rock Music Franchising, LLC v. Smith*, 389 F. App'x 172, 177 (3d Cir. 2010) (citation omitted). The Court, however, "may not reevaluate supposed inconsistencies in the arbitrator's logic or review the merits of the arbitrator's decision." *Loc. 863 Int'l Bhd. of Teamsters v. Jersey Coast Egg Producers, Inc.*, 773 F.2d 530, 534 (3d Cir. 1985). Wacoal fails to meet this standard.

Wacoal alleges that the Arbitrator manifestly disregarded the law by ignoring legal precedent allowing employers to "exclude non-employee union organizers" from the workplace absent a showing that "the employees are otherwise inaccessible through reasonable means." (Wacoal Br. at 8.) Wacoal claims that, because the Union has made no such showing, the Arbitrator erred in concluding that Alvarez's conduct, which allegedly "incited" Collada's actions, was "protected concerted activity under [the NLRA.]" (*Id.* at 7.) Wacoal also claims the Arbitrator failed to appropriately consider an employer's right to "maintain order" in the workplace when confronted with disruptive conduct and ignored precedent that would have justified Wacoal's response to Collada's "insubordinate conduct." (*Id.*)

As an initial matter, it is unclear how Alvarez's conduct, or Wacoal's right to exclude Alvarez, is directly relevant to deciding whether Wacoal had just cause to terminate Collada. Although Collada's actions may not have occurred but for Alvarez, Wacoal has not shown that the question of whether Alvarez could be excluded from the workplace "controlled the outcome of the disputed issue," much less that the Arbitrator knew this determination would be dispositive and

failed to apply the required standard. *See Armstrong v. Morgan Stanley Smith Barney, LLC*, No. 24-691, 2024 WL 4345410, at *5 (D.N.J. Sep. 30, 2024) (confirming arbitration award where the challenging party failed to demonstrate that arbitrator "appreciated that [a particular] principle controlled the outcome of the disputed issue, and . . . nonetheless willfully flouted the governing law by refusing to apply it." (quoting *Paul Green Sch. of Rock*, 389 Fed. App'x at 176-77)).

Similarly unavailing is Wacoal's argument that the Arbitrator failed to balance Collada's "right to engage in concerted activity" against Wacoal's "right to maintain order and respect." (Wacoal Br. at 10 (quoting *NLRB v. Prescott Indus. Prods. Co.*, 500 F.2d 6, 10 (8th Cir. 1974)). Wacoal contends that, because protected concerted activity does not include "conduct that is violent, threatening, or otherwise disruptive to the workplace," if the Arbitrator had properly applied relevant law and considered the evidence presented, he would have concluded that Wacoal had just cause to terminate Collada, whose actions were sufficiently egregious to forfeit protection under the NLRA. (*Id*. at 10–11.)

Wacoal has not shown, however, that the Arbitrator disregarded any applicable legal standard. Rather, as the Arbitrator stated in denying Wacoal's motion for reconsideration, "Collada's conduct fell short of the egregious behavior necessary to lose the protection of the [NLRA]." (Arb. Recons. Op. at 5.) In arriving at such a finding, the Arbitrator "juxtaposed" Wacoal's Workplace Violence Policy against the Union's right "to engage in 'concerted activities' such as its workplace demonstration," and concluded that Collada "was neither violent nor engaged in intimidating or disorderly conduct to the extent he lost his Section 7 protections." (*Id*.) In other words, the Arbitrator *did* balance Wacoal's right to maintain order in the workplace with Collada's right to engage in concerted activities and nevertheless concluded, based on the record, that Collada's activities were protected. The crux of Wacoal's objection, then, is that the Arbitrator

13

simply arrived at a different conclusion than Wacoal feels is warranted by the evidence. Even if Wacoal's perspective had merit, this purportedly erroneous factfinding does not constitute manifest disregard of law.

### iii.     Evident Partiality (9 U.S.C. § 10(a)(2))

Wacoal also claims the Award should be vacated because the Arbitrator's opinion "so closely mirrored the Union's post-hearing brief . . . that any reasonable person would see that [the Arbitrator] was not impartial." (Wacoal Br. at 18.) Wacoal's argument centers on similarities between the Arbitrator's decision and the Union's post-hearing brief, arguing that, because the Arbitrator's decision "either closely tracked, or rep*eated verbatim*, a multitude of arguments made in the Union's post-hearing brief" (*Id*. at 5), the Court should conclude that the Arbitrator "was always going to find for the Union" and was thus biased under Section 10(a)(2). (*Id*. at 18.)

The Court may vacate an arbitration award if the arbitrator demonstrated "evident partiality or corruption." *Facta Health*, 2024 WL 4345299, at *7 (quoting 9 U.S.C. § 10(a)(2)). "[E]vident partiality is strong language and requires proof of circumstances powerfully suggestive of bias." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 252 (3d Cir. 2013) (quoting *Kaplan v. First Options of Chi., Inc*., 19 F.3d 1503, 1523 n.30 (3d Cir. 1994)). "An arbitrator is evidently partial only if a reasonable person would have to conclude that she was partial to one side." *Id.* at 253. "The conclusion of bias must be [inescapable], the favorable treatment unilateral." *Id.* Put a different way, "the arbitrator's bias must be sufficiently obvious that a reasonable person would easily recognize it." *Id.*

The essence of Wacoal's partiality argument is that the Arbitrator was in near-total agreement with the Union's positions, including factual and legal analyses, relevant authority, and appropriate relief. (Wacoal Br. at 18.) However, Wacoal fails to explain why these similarities

14

amount to "evident partiality." Indeed, Wacoal cites no authority to support the contention that an arbitration award may be overturned due to such similarities, nor is the Court aware of any. *See Tonnelle N. Bergen, LLC v. SB-PB Victory, L.P.*, No. 23-3136, 2023 WL 7412936, at \*7 (E.D. Pa. Nov. 9, 2023) (declining to vacate arbitration award under § 10(a)(2) where the only evidence of partiality were "critiques of the arbitrator's weighing of the evidence and agreement with [the respondent's] positions.")

Further, Wacoal points to no evidence showing the Arbitrator had improper motives, conflicts of interest, or other sources of bias that would indicate improper partiality. *See Jones v. Home Buyers Warranty Corp.*, No. 17-773, 2019 WL 2067650, at \*7 (D. Del. May 10, 2019) ("Courts have largely addressed 9 U.S.C. § 10(a)(2) in the context of the arbitrator's alleged conflicts of interest and bias."). The mere fact that there are similarities between the Union's brief and the Arbitrator's opinion in their descriptions of factual and legal issues, cited authority, and requested relief, is, at best, speculative evidence of partiality, and certainly does not rise to the level of "direct, definite, and capable of demonstration." *Lourdes Med. Ctr. v. JNESO*, No. 04-4494, 2007 WL 1040961, at \*8 (D.N.J. Apr. 5, 2007) (quoting *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 626 (6th Cir. 2002)). The Court declines to vacate the Award on ungrounded speculation particularly where Wacoal fails to establish that the factual and legal issues were incorrect.

Additionally, although Wacoal takes issue with the fact the Arbitrator awarded "the most extreme form of relief," (Wacoal Br. at 18), Wacoal offers no reason why the Award is improper under the CBA. Indeed, the CBA states that, "[n]o worker shall be discharged without good and sufficient cause." (CBA ¶ 16.) The CBA further provides that if a discharge is "found to be unjustified, the worker shall be compensated for the loss of his earnings during the period of such

discharge" and that an arbitration award may "contain provisions directing or restraining acts and conduct of the parties." (*Id*. ¶¶ 16, 35.) Here, the Arbitrator determined that Wacoal terminated Collada without sufficient cause and entered an award well within the remedies provided by the CBA. The Award therefore clearly "draws its essence" from the CBA. *See Metromedia Energy, Inc. v. Enserch Energy Servs.*, 409 F.3d 574, 584 (3d Cir. 2005) (stating that courts "must uphold the arbitration panel's award so long as it 'draws its essence' from or 'arguably construes or applies' the parties' contract." (quoting *News Am. Publ'n*, 918 F.2d at 24)).

Accordingly, the Court **denies** Wacoal's motion to vacate and **confirms** the Award granting Collada reinstatement to his former position at Wacoal, effective immediately, with full back pay and commensurate benefits.

### B.     Back Pay, Interest, and Attorney's Fees and Costs

The purpose of awarding back pay is to compensate an employee "for the salary he should have received for a fixed period of time in the past." *Gloucester Terminals, LLC v. Teamsters Loc. Union 929*, No. 16-5322, 2017 WL 2224949, at *7 (E.D. Pa. May 22, 2017). Here, the Award granted Collada "full back pay and commensurate benefits" for the time he was unable to work. (Arb. Op. at 25.) It also required that Collada be reinstated to his original position at Wacoal "effective immediately," but his reinstatement was delayed due to Wacoal's unsuccessful challenge of the Award. (*Id*.) Therefore, Collada is entitled to back pay and commensurate benefits for the entire period during which he was out of work: the period from the date of his termination until the date hereof. *See Gloucester Terminals*, 2017 WL 2224949, at *8 (granting an employee back pay for lost earnings "from the date of the arbitration award to [the date of the court's judgment]."); *Mansfield Plumbing Prod., LLC v. Teamsters Loc. Union No. 40*, No. 05-1687, 2005 WL 3544085, at *7 (N.D. Ohio Dec. 28, 2005) (collecting cases where courts "awarded back pay

16

for the periods between arbitrator-ordered reinstatement and final court rejection of challenges to reinstatement.").

Having determined the period for which Collada is entitled to back pay, the Court must now determine the amount. The Union asserts that "Collada's back pay from the date of his termination through [the date of the Arbitrator's denial of the Motion for Reconsideration] is equal to $16,674.75." (Union Pet. ¶ 25.) However, in its Answer, Wacoal "denies the accuracy of the calculations" used to arrive at this amount. (Wacoal Answer ¶ 25, ECF No. 8.) Using similar calculations, the Union alleges that Collada is also entitled to $123.00 for each business day since denial of the Motion for Reconsideration. (Union Reply Br. at 18; *see also* Collada Decl. ¶ 7, ECF No. 1-4.)

Because the Arbitrator retains jurisdiction "to address any issues that may arise in the implementation or interpretation of the remedy portion of [the Award]," the Court will allow the Arbitrator to resolve pending questions regarding the calculation of back pay to which Collada is entitled. *See James Monroe Condo. at Newport, Inc. v. SEIU Loc. 32BJ*, No. 20-7455, 2021 WL 689148, at *4 (D.N.J. Feb. 23, 2021) (confirming the arbitration award but allowing the arbitrator to resolve disputes "regarding calculation and amount of back pay due."); *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960) ("We agree with the Court of Appeals that the judgment of the District Court should be modified so that the amounts due the employees may be definitely determined by [the arbitrator]."); *see also UFCW Local 7R v. Safeway Stores, Inc.*, 889 F.2d 940, 949 (10th Cir. 1989) (remanding "the dispute regarding the appropriate amount of back pay to the arbitrator.") The Court, accordingly, **remands** this matter to the Arbitrator to determine the dollar amount of back pay awarded to Collada in accordance herewith.

17

Relatedly, the Union requests pre-judgment interest on Collada's back-pay award, post-judgment interest, and attorneys' fees. But the amount of interest depends on the size of the back-pay award. As the Arbitrator shall decide the back-pay award, the Court need not address interest at this time. Instead, because the CBA empowers the Arbitrator to determine the amount of damages, "in addition to any other relief or remedy" (*see* CBA § 13), the matters of pre-judgment interest, post-judgment interest, and attorneys' fees are better left to the Arbitrator. The Court, accordingly, **remands** the matter of pre-judgment interest, post-judgment interest, and attorneys' fees to the Arbitrator. For the avoidance of any doubt, the Arbitrator shall decide (1) whether he has jurisdiction to award interest and fees, and (2) the amount of interest and fees to be awarded.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Wacoal's motion to vacate (ECF No. 9) is **DENIED**, and the Union's petition and motion to confirm the Award (ECF No. 1) is **GRANTED.** This matter is **REMANDED** to the Arbitrator to determine the amount of backpay owed to Collada, along with pre-judgment interest, post-judgment interest, and attorneys' fees. An appropriate Order accompanies this Opinion.

**DATED: 3/5/2026**

JULIEN XAVIER NEALS
United States District Judge